MAX N. TOBIAS, JR., Judge.
_JjIn this medical malpractice action, Michael L. Scardina, Jr. and Christine *693 Scardina Powell (“the plaintiffs”) appeal the trial court’s judgment granting an exception of prescription in favor of the defendant, Michael Adinolfi, M.D. (“Dr. Adinolfi”). For the reasons that follow, we affirm.

FACTS:

On 28 February 2000, the plaintiffs’ father, Michael L. Scardina (“Mr. Scardi-na”), was working as a seaman for Maersk Lines, Ltd. (“Maersk”) when he allegedly injured his back. As a result, Mr. Scardi-na filed a Jones Act claim in federal court. The federal court action was later dismissed.
Mr. Scardina treated with Dr. Kenneth Adatto (“Dr. Adatto”) for his back injuries. On 29 November 2000, back surgery was performed by Drs. Adinolfi and Adatto on Mr. Scardina. Following complications from the surgery, Mr. Scardina instituted a complaint with the Louisiana Patient’s Compensation Fund (“PCF”) against Drs. Adinolfi and Adatto on 27 November 2001. Maersk also filed a complaint with the PCF seeking contribution and/or indemnity for benefits it paid in connection with Mr. Scardina’s injury. Mr. Scardina dismissed Dr. Adatto from the medical malpractice complaint on 23 July 2002.
|20n 7 October 2004, following an adverse PCF panel decision, Mr. Scardina filed a medical malpractice suit against Dr. Adinolfi in district court. Maersk also filed suit against Drs. Adinolfi and Adatto in district court. The actions were consolidated with the previously filed petition for discovery in district court.
Mr. Scardina departed this life on 20 November 2004, and the plaintiffs, as his surviving heirs, filed an amended petition, substituting themselves as party plaintiffs. On 3 November 2005, the plaintiffs filed a petition to amend the suit to add a claim for wrongful death, alleging negligence on the part of Drs. Adinolfi and Adatto. The record reflects that the filing fee for the amendment was not paid until 10 January 2006. The record also reflects that the petition to amend for wrongful death was not served on the defendants, although the plaintiffs claim to have mailed the amended petition to the defense counsel of record. The plaintiffs also submit that the clerk of court was unable to confirm the filing of the amended petition due to hectic post-Katrina conditions. Out of an abundance of caution, the plaintiffs re-filed their petition to amend for wrongful death on 3 January 2006. As with the first filing, this pleading did not included service instructions, and was not served on the defendants.
In response to the amended petition for wrongful death, Dr. Adinolfi filed a motion to dismiss asserting the plaintiffs failed to (1) request service of process of the petition on Dr. Adinolfi for more than 90 days and (2) bring the wrongful death claim before a medical review panel pursuant to La. R.S. 40:1299.47(B)(l)(a)(i).[1] On 11 October 2006, the trial court granted Dr. Adinolfi’s motion to dismiss based on prematurity. The judgment was later amended on 1 December 2006 to properly | sreflect the name of the plaintiffs’ counsel, which was inadvertently omitted from the original judgment. The trial court determined that Dr. Adinolfi was entitled to have the wrongful death claim heard before a medical review panel before commencing litigation in the trial court. The *694 plaintiffs did not appeal the judgment; and that judgment is now final.[2]
On 2 November 2006, the plaintiffs filed a wrongful death claim with the PCF. In response, Dr. Adinolfi filed an exception of prescription, arguing that the prematurely-filed petition for wrongful death was not filed within one year from the date of Mr. Scardina’s passing on 20 November 2004, and/or the complaint with the PCF was filed more than one year after the date of death.
On 18 June 2007, the trial court granted Dr. Adinolfi’s exception of prescription. This timely devolutive appeal followed.

LAW AND ANALYSIS

The plaintiffs argue that the trial court erred in granting both the exception of prematurity and the exception or prescription in favor of Dr. Adinolfi.
As previously stated, the judgment granting the exception of prematurity, dated 11 October 2006, and amended on 1 December 2006, is a final judgment. No appeal therefrom was timely taken. See La. C.C.P. arts. 1841 and 1915. Accordingly, the only remaining issue before this Court is whether the plaintiffs’ wrongful death action has prescribed.
La. R.S. 9:5628 provides for the prescriptive period for medical malpractice actions, and states in pertinent part:
|4A. No action for damages for injury or death against any physician, ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect;....
Wrongful death actions are not within the scope of La. R.S. 9:5628. Rajnowski v. St. Patrick’s Hosp. of Lake Charles, 99-1817, p. 3 (La.App. 3 Cir. 6/7/00), 768 So.2d 88, 90. The prescriptive period for a wrongful death action is controlled by La. C.C. art. 3492, the one-year liberative period applicable to delictual actions. Taylor v. Giddens, 618 So.2d 834, 841 (La.1993). As explained in Taylor, although the applicable prescriptive period for wrongful death actions is the one-year period set forth in La. C.C. art. 3492, the Louisiana Medical Malpractice Act continues to govern and procedurally control wrongful death actions. Id. Thus, a plaintiffs wrongful death claim arising from alleged medical malpractice must be filed within one of the date of death. Id.; see also Mitchell v. Rehabilitation Institute of New Orleans, Inc., 06-0910, (La.App. 4 Cir. 2/14/07), 953 So.2d 75. Moreover, the jurisprudence is clear that a premature medical malpractice suit does not interrupt or suspend prescription. Baham v. Medical Center of Louisiana at New Orleans, 00-2022, p. 4 (La.App. 4 Cir. 7/11/01), 792 So.2d 85, 88, citing LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226.
In the present case, Mr. Scardina died on 20 November 2004. Consequently, his heirs had until 20 November 2005 to request a medical review panel for the wrongful death claim. The request for a medical review panel was not made until 2 November 2006.
IsThe plaintiffs argue that it was not necessary to file their wrongful death claim with a medical review panel because the first medical malpractice claim brought before the PCF by their father and the subsequent wrongful death action both stem from Mr. Scardina’s surgery of 29 *695 November 2000. Moreover, the plaintiffs assert that because Dr. Adinolfi was served with the original suit filed by Mr. Scardina, and his attorney of record was served with all subsequent pleadings, Dr. Adinolfi and his attorney, had personal knowledge of the pendency of all claims.
Dr. Adinolfi counters that the issues brought before the first- medical review panel, claiming malpractice in connection with Mr. Scardina’s back surgery, were totally separate and distinct from the issues raised in the plaintiffs’ amended petition for wrongful death. More specifically, Dr. Adinolfi points out that Mr. Scardina died from throat cancer; and the allegations made by the plaintiffs (that Mr. Scar-dina’s cancer was caused by his being intu-bated following his surgery) were never raised before the medical review panel. Therefore, Dr. Adinolfi submits he was entitled to have the new cause of action heard before a medical review panel. We agree.
A similar question was addressed in Kerry v. State ex rel. Bd. of Sup’rs of La. State University, 06-00131, (La.App. 3 Cir. 7/12/06), 935 So.2d 385, in connection with an exception of prematurity. In Kerry, the plaintiff, Ms. Kerry, filed a claim against the defendant hospital alleging medical malpractice in connection with her hospital stay. She died while her claim was pending. After her death, the medical review panel found that the hospital breached the applicable standard of care. Thereafter, Ms. Kerry’s husband, Darvin, filed a wrongful death action in the trial court. The defendant hospital argued that the action was | (¡premature because the wrongful death claim was a separate cause of action that had to be presented to a medical review panel. The trial court denied the exception of prematurity. The Third Circuit Court reversed, and granted the exception of prematurity. In ruling that the wrongful death claim should have been presented to a medical review panel, the Court explained:
Robbie’s [Ms. Kerry’s] death certificate lists septicemia due to PEG tube site cellulitis as the cause of her death. The State urges that the medical review panel’s decision was limited to the finding that it was negligent in causing her brain damage. The State argues that the medical review panel did not decide whether it breached the standard of care pertaining to the septicemia and that this issue must be presented to'the medical review panel.
The State further characterizes the issue as whether Darvin’s wrongful death claim is a separate cause of action from the survival action that must be presented to the medical review panel. It is true that wrongful death and survival actions are separate and distinct claims that can arise from a common tort, but there can be instances where a second tortious act occurs in the interim. This case presents an issue of first impression of whether or not Robbie’s death from septicemia requires a medical review panel to convene to determine if the septicemia was a negligent act or if it arose out of the original act which the medical review panel has already deemed was a derogation of the standard of care. We do not view the issue as separate claims under the medical malpractice act necessarily because survival and wrongful death actions are two separate actions. There are cases in which there would be little dispute that both the survival and wrongful death actions arose from the same act of malpractice. Rather, we view the issue in this case as whether there exists two separate injuries resulting from two different acts, i.e. 1) the brain damage which the medical review panel has de *696 termined was malpractice and, 2) death from infection of the PEG tube.
We view Robbie’s death from septicemia as a separate injury that requires an expert opinion from the medical review panel as to whether or not it was malpractice.
Kerry, 06-00131, pp. 2-3, 935 So.2d at 387.
|7In the case at bar, it is clear that the allegations made in the wrongful death claim were not presented to the first medical review panel, which convened to address Mr. Seardina’s medical malpractice claim. The first claim was based on the alleged lack of informed consent in connection with the surgery performed, specifically, that Mr. Scardina was never told that his weight and smoking would increase the risk of complications during the procedure. The medical review panel found no negligence on the part of Dr. Adinolfi.
In the wrongful death claim, the plaintiffs allege, in addition to those claims made in the first petition, that Dr. Adinolfi deviated from the standard of care in negligently causing Mr. Scardina to be intu-bated for an extensive period of time, resulting in cancer of the larynx. The new allegations in the wrongful death claim were not addressed by the medical review panel. The panel did not decide whether Dr. Adinolfi breached the standard of care in connection with the intubation of Mr. Scardina. Therefore, we find that Dr. Adi-nolfi was entitled to have this additional allegation brought before a medical review panel. Because the plaintiffs did not file their wrongful death claim with the PCF within one year of Mr. Scardina’s death, we find, as did the trial court, that the wrongful death action prescribed.

CONCLUSION

For the foregoing reasons, we find no error on the part of the trial court in granting Dr. Adinolfi’s exception of prescription. Accordingly, the trial court’s judgment is affirmed.

AFFIRMED.

. The statute provides in pertinent part: “No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to this Section.”

. On 20 June 2006, the trial court granted an exception of prematurity in favor of Dr. Adat-to. Dr. Adatto is not involved in this appeal.